SCOTT N. SCHOOLS, SC SBN 9990
United States Attorney
JOANN M. SWANSON, CSBN 88143
Assistant United States Attorney
Chief, Civil Division
ILA C. DEISS, NY SBN 3052909
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
Telephone: (415) 436-7124
FAX: (415) 436-7169

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JUN LIANG and YUNQIU YUAN, | No. C 07-2349 CW |
| Plaintiffs, | DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT; AND DECLARATION OF F. GERARD HAINAUER |
| v. | |
| ALBERTO GONZALES, United States Attorney General, U.S. Department of Justice; MICHAEL CHERTOFF, Secretary of the Department of Homeland Security; EMILIO T. GONZALEZ, Director of United States Citizenship and Immigration Services; GERARD HEINAUER, Director of Nebraska Service Center, United States Citizenship and Immigration Services; ROBERT S. MUELLER III, Director of the Federal Bureau of Investigation, | Date:       October 11, 2007<br>Time:       2:00 p.m.<br>Courtroom:  2, 4th Floor |
| Defendants. | |

## I. INTRODUCTION

Plaintiffs June Liang and Yunqiu Yuan, natives and citizens of China, ask this Court to issue a writ of mandamus, compelling Defendants to reach a decision on their applications for adjustment of status to legal permanent residents (LPR). They also ask the Court to find that Defendants have violated the Administrative Procedure Act (APA), and to grant relief under the Declaratory Judgment Act. Plaintiffs' claims must fail.

Plaintiffs' applications remain pending because lead applicant, Plaintiff Liang, still has his

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii, iii, iv, v

INTRODUCTION ............................................................................................................................ 1

FACTS ............................................................................................................................................. 2

GENERAL PRINCIPLES APPLICABLE TO THIS MOTION .................................................... 3

    A. Legal Standard ...................................................................................................................... 3

    B. Adjustment of Status ............................................................................................................. 3

    C. Relief Available Under the Mandamus Act and the APA .................................................... 4

ANALYSIS ...................................................................................................................................... 5

    A. All Defendant's Except Chertoff Should Be Dismissed ....................................................... 5

    B. The Mandamus Act and the APA Cannot Provide Plaintiffs the Relief They Seek ........... 6

        1. Plaintiffs Seek to Compel Discretionary Actions ........................................................... 6

        2. Plaintiffs Seek To Compel Multiple Actions ................................................................. 7

    C. The Delay is Reasonable ........................................................................................................ 8

        1. A Rule of Reason Governs the Agency Decisions at Issue ........................................... 9

        2. There Is No Congressionally Mandated Timetable ..................................................... 10

        3. The Impact of the Delay is Minimal in Comparison with the National Interest in Complete and Thorough Background Checks ............................................................ 11

        4. The Effect of Expedition Would Intrude on Agency Discretion and Prejudice Other "First in Line" Applicants ................................................................................ 13

        5. The agencies are Exercising Every Effort to Address the Delay ............................... 14

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

Alkenani v. Barrows,
356 F. Supp. 2d 652 (N.D. Tex. 2005) .................................................................. 15

Allied Chemical Corp. v. Daiflon, Inc.,
449 U.S. 33 (1980) .................................................................................................. 4

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ................................................................................................ 3

In re Barr Laboratories Inc.,
930 F.2d 72 (D.C. Cir. 1991) ........................................................................... 10, 13

Boim v. Quranic Literacy Institute,
291 F.3d 1000 (7th Cir. 2002) ............................................................................... 13

Califano v. Sanders,
430 U.S. 99 (1977) .................................................................................................. 5

Celotex Corp. v. Cattrett,
477 U.S. 317 (1986) ................................................................................................ 3

Cheney v. United States District Court for the District of Columbia,
542 U.S. 367 (2004) ................................................................................................ 4

Cordoba v. McElroy,
78 F. Supp. 2d 240 (S.D.N.Y. 2000) ..................................................................... 11

Espin v. Gantner,
381 F. Supp. 2d 261 (S.D.N.Y. 2005) ................................................................... 15

Fraga v. Smith,
607 F. Supp. 517 (D. Or. 1985) ............................................................................... 9

Freeman v. Arpaio,
125 F.3d 732 (9th Cir. 1997) ................................................................................... 3

Harmon Cove Condominium Association, Inc. v. Marsh,
815 F.2d 949 (3d Cir. 1987) .................................................................................... 6

Heckler v. Ringer,
466 U.S. 602 (1984) ................................................................................................ 4

INS v. Miranda,
459 U.S. 14 (1982) ................................................................................................ 10

Kildare v. Saenz,
325 F.3d 1078 (9th Cir. 2003) ............................................................................. 5, 6

Liberty Fund, Inc. v. Chao,
394 F. Supp. 2d 105 (D.D.C. 2005) ..................................................... 9, 10, 11, 12, 14

Manzoor v. Chertoff,
472 F. Supp. 2d 801 (E.D. Va. 2007) ............................................................................. 14

Marincas v. Lewis,
92 F.3d 195 (3d Cir. 1996) ............................................................................................. 11

Mashpee Wampanoag Tribal Council, Inc. v. Norton,
336 F.3d 1094 (D.C. Cir. 2003) ..................................................................................... 13

Norton v. Southern Utah Wilderness Alliance,
542 U.S. 55, 124 S. Ct. 2373, 159 L. Ed. 2d 137 (2004) ................................................. 5

Southern Utah Wilderness Alliance,
542 U.S. 55 (2004) ....................................................................................................... 7, 8

Rockbridge v. Lincoln,
449 F.2d 567 (9th Cir. 1971) ........................................................................................... 5

Safadi v. Howard,
466 F. Supp. 2d 696 (E.D. Va. 2006) ............................................................................ 12

Saleh v. Ridge,
367 F. Supp. 2d 508 (S.D.N.Y. 2005) ..................................................................... 14, 15

Skelly Oil Co. v. Phillips Petroleum Co.,
339 U.S. 667 (1950) ......................................................................................................... 5

Spencer Enterprises, Inc. v. United States,
345 F.3d 683 (9th Cir. 2003) ........................................................................................... 6

Staacke v. U.S. Department of Labor,
841 F.2d 278 (9th Cir. 1988) ........................................................................................... 5

Takkallapalli v. Chertoff,
487 F. Supp. 2d 1094 (W.D. Mo. 2007) ......................................................................... 7

Telecomm. Research and Action Ctr. v. FCC,
750 F.2d 70 (D.C. Cir. 1984) .......................................................................................... 8

Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,
435 U.S. 519 (1978) ....................................................................................................... 14

Walters v. Reno,
145 F.3d 1032 (9th Cir. 1998) ....................................................................................... 13

Wilmot v. Doyle,
403 F.2d 811 (9th Cir. 1968) ........................................................................................... 5

Work v. United States,
267 U.S. 175 (1925) ......................................................................................................... 6

Wright v. Califano,
587 F.2d 345 (7th Cir. 1978) ..................................................................................... 9, 14

**STATE CASES**

9/11 Commission Report,
2004 WL. 1634382 (July 22, 2004) .................................................................................. 12

Dmitriev v. Chertoff, No. C 06-7677 JW,
2007 WL. 1319533 (N.D. Cal. May 4, 2007) ...................................................................... 6

Eldeeb v. Chertoff, et al.,
2007 WL. 2209231 (M.D. Fla. July 30, 2007) ................................................. 6, 10, 11, 15

Patil v. Mueller, et al., No. C 07cv71 JCC,
2007 WL. 1302752 (E.D. Va. Apr. 30, 2007) ................................................................... 12

RMW,
2007 WL. 2070325 (N.D. Cal. July 13, 2007) .................................................................... 6

Sozanski v. Chertoff, et al.,
No. 06-CV-0993 N, 2006 WL. 4516968 (N.D. Tex. Dec. 11, 2006) ................................... 7

Sze v. INS, No. C 97-0569 SC,
1997 WL. 446236 (N.D. Cal. Jul. 24, 1997) .................................................................... 8, 9

Yan v. Mueller,
2007 WL. 1521732 (S.D. Tex. May 24, 2007) .............................................................. 7, 14

**DOCKETED CASES**

Cardenas-Escalante v. Chertoff,
No. 07cv0212 ....................................................................................................................... 7

Konchitsky v. Chertoff,
No. C-07-00294 ................................................................................................................... 6

**FEDERAL STATUTES**

8 C.F.R. § 245.2 .................................................................................................................. 6

8 C.F.R.§ 245.6 ................................................................................................................... 6

8 U.S.C. § 1105(a) .............................................................................................................. 4

8 U.S.C. §§ 1105(b)(1) ...................................................................................................... 10

8 U.S.C. § 1255 ........................................................................................................... 3, 4, 6

6 U.S.C. § 271(b) ............................................................................................................ 3, 5

5 U.S.C. §551(13) ............................................................................................................ 5, 3

5 U.S.C. § 701(a)(2) ............................................................................................................ 5

5 U.S.C. § 706(1) ................................................................................................................ 5

28 U.S.C. § 2201 ("DJA") .................................................................................................. 5

Fed. R. Civ. P. 56(c) ........................................................................................................... 3

Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, § 3001(g), 118 Stat. 3638 (2004) ............................................................................ 7, 10

name check pending with the Federal Bureau of Investigation (FBI). The facts are undisputed, and Defendants are entitled to judgment as a matter of law. Accordingly, Defendants respectfully ask this Court to grant their motion for summary judgment.

## II. FACTS

Plaintiff Liang's adjustment application is based on an application for an alien worker position filed with the Department of Labor by his employer, Oracle, USA in April 2005. *See* Declaration of Gerard Heinauer (Heinauer Decl.) ¶¶ 4-5 (attached as Exh. A). On July 2, 2007, the Department of Labor announced that all employment-based visa numbers under the fiscal year numerical limitations set by Congress had been used and that employment preference numbers will once again be available beginning October 1, 2007. *Id.* General requirements for employment-based adjustment of status applications are that the alien is the beneficiary of an approved I-140 visa petition (or is the spouse of an alien worker who has adjusted status), is in lawful immigration status, has a visa number immediately available to him under the annual per-country and preference category quota, and is not inadmissible to the United States under listed statutory grounds. Heinauer Decl. ¶ 6. A Fact Sheet is attached to the Heinauer Declaration which explains the different types of background and security checks relevant to the statutory requirement that the alien be admissible to the United States that must be completed prior to adjudication of the application for adjustment of status. Heinauer Decl. ¶ 7. Both Plaintiffs' name check requests were electronically submitted to the FBI in April 2005, approximately one week after receipt of their adjustment of status applications. Heinauer Decl. ¶ 14. The name check for Plaintiff Yuan was completed in May 2005 and the name check for Plaintiff Liang remains pending. Id. Plaintiff Yuan's application cannot be adjudicated until Plaintiff Liang's is complete as she is a dependent. Id.

All applicants for adjustment of status undergo a series of security and background checks to ensure that the alien is eligible for the immigration benefit and that he or she is not a risk to the national security or public safety. Heinauer Decl. ¶ 8. These law enforcement checks have revealed significant derogatory information on various alien applicants for immigration benefits, which has resulted in an alien being found ineligible for the benefit and USCIS's denial of the

Defendants' Cross-Motion for Summary Judgment
C07-2349 CW                    2

application. Heinauer Decl. ¶ 9. In many instances, the disqualifying information on the alien has been discovered as a result of the IBIS or FBI name checks, but it has not been revealed by a fingerprint check alone. Id. The fingerprint check must be less than fifteen months old at the time any application or petition is adjudicated. Both Plaintiffs were fingerprinted on October 13, 2005, and March 7, 2007, and is valid for 15 months. Heinauer Decl. ¶ 12. Plaintiffs have both applied for and have been granted work authorization and parole travel documents, which are valid well into 2008. Heinauer Decl. ¶ 21.

## III. GENERAL PRINCIPLES APPLICABLE TO THIS MOTION

### A. Legal Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *See id.* at 248. The Ninth Circuit has declared that "[i]n considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *See Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986).

### B. Adjustment of Status

Section 245 of the Immigration and Nationality Act, codified at 8 U.S.C. § 1255, authorizes the Secretary of the Department of Homeland Security ("Secretary")[1] to adjust to permanent residence status certain aliens who have been admitted into the United States. Adjustment of

---

[1] On March 1, 2003, the Department of Homeland Security and its United States Citizenship and Immigration Services assumed responsibility for the adjustment program. 6 U.S.C. § 271(b). Accordingly, the discretion formerly vested in the Attorney General is now vested in the Secretary of Homeland Security. 6 U.S.C. § 551(d).

Defendants' Cross-Motion for Summary Judgment
C07-2349 CW                                3

status is committed to the Secretary's discretion as a matter of law. Section 1255(a) expressly provides:

> The status of an alien who was inspected and admitted or paroled into the United States . . . <u>may</u> be adjusted by the [Secretary], <u>in his discretion</u> and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence[.]

8 U.S.C. 1255(a) (emphasis added). Significantly, the statute does not set forth any time frame in which a determination must be made on an application to adjust status.

Before a decision is rendered on an alien's application to adjust status, USCIS, in conjunction with the FBI, conducts several forms of security and background checks to ensure that the alien is eligible for the benefit sought and that she is not a risk to national security or public safety. Heinauer Decl. ¶ 8. USCIS also conducts investigations into the bona fides of petitions and applications that have been filed, in order to maintain the integrity of the application process and to ensure that there is no fraud in the application process. *See* 8 U.S.C. § 1105(a) (authorizing "direct and continuous liaison with the Directors of the Federal Bureau of Investigation and the Central Intelligence Agency and with other internal security officers of the Government for the purpose of obtaining and exchanging information for use in enforcing the provisions of this chapter in the interest of the internal and border security of the United States"). These checks currently include extensive checks of various law enforcement databases, including the FBI. Heinauer Decl. ¶ 8-12.

**C. Relief Available Under the Mandamus Act and the APA**

Mandamus is an extraordinary remedy. *See Cheney v. United States District Court for the District of Columbia*, 542 U.S. 367, 392 (2004) (Stevens, J., concurring); *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980). The United States Supreme Court has stated that "[t]he common law writ of mandamus is intended to provide a remedy for a plaintiff only if . . . the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). The Ninth Circuit has explained that

> [m]andamus . . . is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is

Defendants' Cross-Motion for Summary Judgment
C07-2349 CW                                    4

nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available.

*Kildare v. Saenz*, 325 F.3d 1078, 1084 (9th Cir. 2003). Mandamus may not be used to instruct an official how to exercise discretion. *Wilmot v. Doyle*, 403 F.2d 811, 816 (9th Cir. 1968).

Judicial review under the APA, 5 U.S.C. § 701, *et seq.*, is also specifically precluded where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Agency action, as defined under the APA, also includes "a failure to act." 5 U.S.C. § 551(13). Where a plaintiff alleges a violation of the APA, the Court must decide whether Defendants' actions. Under 5 U.S.C. § 706(1), a court may compel "agency action unlawfully withheld or unreasonably delayed." The elements of a claim under § 706(1) are the existence of a discrete, ministerial duty; a delay in carrying out that duty; and a determination that the delay was unlawful or unreasonable in light of prejudice to one of the parties. *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 124 S. Ct. 2373, 2378-80, 159 L. Ed. 2d 137 (2004); *Rockbridge v. Lincoln*, 449 F.2d 567, 569-73 (9th Cir. 1971).

The APA does not provide an independent jurisdictional basis. *Califano v. Sanders*, 430 U.S. 99, 107 (1977); *Staacke v. U.S. Department of Labor*, 841 F.2d 278, 282 (9th Cir. 1988). Rather, it merely provides the standards for reviewing agency action once jurisdiction is otherwise established. *Staacke*, 841 F.2d at 282. Similarly, the Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"), does not provide an independent basis for jurisdiction; rather, it only expands the range of remedies available in federal courts. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950).

## IV. ANALYSIS

### A. All Defendants Except Chertoff Should Be Dismissed

Since March 1, 2003, the Department of Homeland Security has been the agency responsible for implementing the Immigration and Nationality Act. *See* 6 U.S.C. §§ 271(b)(5), 557. Accordingly, the only relevant Defendant here is Michael Chertoff, in his capacity as Secretary of the Department of Homeland Security, and all other Defendants

Defendants' Cross-Motion for Summary Judgment
C07-2349 CW                                    5

should be dismissed. *See Konchitsky v. Chertoff*, No. C-07-00294 RMW, 2007 WL 2070325, at *6 (N.D. Cal. July 13, 2007); *Dmitriev v. Chertoff*, No. C 06-7677 JW, 2007 WL 1319533, at *4 (N.D. Cal. May 4, 2007).

### B. The Mandamus Act and the APA Cannot Provide Plaintiffs the Relief They Seek

#### 1. Plaintiffs Seek To Compel Discretionary Actions

Mandamus is reserved for those situations in which the duty is ministerial, nondiscretionary, and so plainly prescribed as to be free from doubt. *Kildare*, 325 F.3d at 1078. A ministerial act is "devoid of the exercise of judgment or discretion." *Harmon Cove Condominium Ass'n, Inc. v. Marsh*, 815 F.2d 949, 951 (3d Cir. 1987). A duty is ministerial "where the officer can do only one thing." *Work v. United States*, 267 U.S. 175, 177 (1925).

Here, the statute itself commits the pace of processing Plaintiff's application to the discretion of the Attorney General. *See* 8 U.S.C. § 1255(a) (an alien's status "*may* be adjusted by the Attorney General, *in his discretion* and under such regulations as *he may* prescribe." (emphasis added)). The applicable regulations make it clear that the Secretary wished to vest USCIS with discretion in how to conduct the adjudication. *See e.g.*, 8 C.F.R.§ 245.6 (an "interview *may* be waived . . . when it is determined by the Service that an interview is unnecessary") (emphasis added); *see also id.* at § 103.2(b)(7) ("[The Service] *may* direct any necessary investigation") (emphasis added); *id.* at § 103.2(b)(18) ("A district director <u>may</u> authorize withholding adjudication") (emphasis added). Furthermore, USCIS has exercised its discretion in determining which name checks should be expedited. Heinauer Decl. ¶ 17-19 (setting forth four categories of cases that will be expedited). Plaintiffs' case meets none of these criteria. Thus, although USCIS must eventually notify Plaintiffs of its decision on their application, *see* 8 C.F.R. § 245.2, he is not entitled to a decision within any particular time-frame. *Spencer Enterprises, Inc. v. United States*, 345 F.3d 683, 690 (9th Cir. 2003); <u>see also</u> *Eldeeb v. Chertoff, et al.*, No. 07cv236-T-17EAJ, 2007 WL 2209231, at *24 (M.D. Fla. July 30, 2007) (dismissing mandamus complaint, finding that USCIS does not owe a non-discretionary duty to an applicant to process an adjustment application at a certain pace).

Defendants' Cross-Motion for Summary Judgment
C07-2349 CW                                                                6

1    Moreover, the FBI name check involves a discretionary function. *Yan v. Mueller*, No. H-07-0313, 2007 WL 1521732, at *6 (S.D. Tex. May 24, 2007) ("The evidence shows that the delay is due, not only to the volume of requests that the FBI receives, but also to the FBI's exercise of discretion in determining the timing for conducting the many name check requests that it receives and the manner in which to conduct those checks."). Congress has not imposed a time frame on name checks for immigration benefits. Contra Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, § 3001(g), 118 Stat. 3638 (2004) (requiring Government personnel security checks to be completed within a certain time frame). Further, numerous courts have recognized the FBI's discretion "in determining the timing for conducting the many name check requests that it receives and the manner in which to conduct those checks." *Yan*, No. H-07-0313, 2007 WL 1521732, at *6; *see also Cardenas-Escalante v. Chertoff*, No. 07cv0212, slip op., p. 9 (S.D. Cal. May 30, 2007) ("Plaintiffs have not pointed to any statute or regulation requiring the FBI to complete background checks in any period of time, reasonable or not."); *Takkallapalli v. Chertoff*, 487 F. Supp. 2d 1094, 1099 (W.D. Mo. 2007) (stating that where delay was due to incomplete name check, "Defendants' conduct [was] sufficient to avoid judicial intervention."); *Li*, 482 F. Supp. 2d at 1179 (recognizing that USCIS has wide discretion "in matters pertaining to the pace of the adjudication of I-485 applications."); *Sozanski v. Chertoff, et al.*, No. 06-CV-0993 N, 2006 WL 4516968, at *1 (N.D. Tex. Dec. 11, 2006) (holding that federal district courts lack jurisdiction to compel the FBI to perform name checks in adjustment of status cases). Compelling USCIS to process Plaintiff's application in a certain time frame would amount to compelling the FBI to exercise its discretion in a certain manner. Accordingly, Plaintiffs seek to compel a discretionary action, and relief is unavailable under either the Mandamus Act or the APA.

2.    Plaintiffs Seek To Compel Multiple Actions

The United States Supreme Court's decision in *Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004), mandates against granting relief. There, the Court determined that the APA's reference to "a failure to act" is limited to a <u>discrete</u> action that the agency is required

Defendants' Cross-Motion for Summary Judgment
C07-2349 CW                                    7

to take. Id. at 64. Here, Plaintiffs ask the Court to compel multiple actions, including whether USCIS requests an expedited name check, and the pace at which USCIS issues a decision once Plaintiff Liang's name check is complete. As discussed above, USCIS has exercised its discretion to determine which cases merit being moved to the head of the name check line for expedited processing. Heinauer Decl. ¶ 19. Plaintiffs can point to no law requiring USCIS to expedite Plaintiff Liang's name check or setting a time frame upon the FBI's exercise of discretion in conducting the investigation. Accordingly, because these are not actions legally required or unlawfully withheld, relief is unavailable under the APA.

### D. The Delay is Reasonable

Even if the actions at issue were not discretionary, Plaintiff has failed to establish the existence of an unreasonable delay. To determine whether a delay is egregious, such that relief under the APA is warranted, several circuits have adopted the test first articulated in Telecomm. Research and Action Ctr. v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984) ("TRAC"). As outlined in TRAC, the factors for consideration include:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulations are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay;
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

750 F.2d at 80.

The court in Sze v. INS, No. C 97-0569 SC, 1997 WL 446236, at *8 (N.D. Cal. Jul. 24, 1997), which applied the TRAC test to a similar complained-of delay in the immigration context, found the fourth factor to be the most persuasive. Id. at *8. The court, in refusing to grant relief under the APA, held that "the reasonableness of administrative delays must be judged in light of the resources available to the agency." Id. The court also recognized that by granting relief, it "would, at best, reorder the queue of applications,


thereby leading to little net benefit." Id.; see also Liberty Fund, Inc. v. Chao, 394 F. Supp. 2d 105, 117 (D.D.C. 2005) (granting deference to agency's decision on how to handle competing applications for permanent labor certifications).

In Liberty Fund, the court refused to grant mandamus relief where it was requested solely due to the length of the delay in processing alien labor certifications. 394 F. Supp. 2d at 115. Applying the TRAC factors, the court held that without a statutory timetable governing agency action, the TRAC factor, "that weighs most heavily under the circumstances of the case is the fourth factor - the effect of granting relief on the agency's competing priorities." Id. at 116. The court reasoned that the agency's "first in, first out processing" was deserving of deference because any grant of relief to petitioners would result in no net gain - petitioners would move to the front of the queue at the expense of other similarly situated applicants. After examining the agency's priorities, growing workload, and good faith efforts to alleviate the delays, the court concluded that mandamus relief was not warranted. Id. at 119.

Just as in Liberty Fund, Plaintiffs' argument of unreasonable delay in this case must also fail. Plaintiffs ask this Court to find that USCIS has not adjudicated their Form I-485 applications in a reasonable period of time. Plaintiffs' legal arguments under Sections 555(b) and 706(1) of the APA fail because adjudication has not been unreasonably delayed. Contrary to Plaintiffs' pleadings, the existence of administrative delays does not mean that such delays are unreasonable. Courts have noted that "the reasonableness of such delays must be judged in light of the resources that Congress has supplied to the agency for the exercise of its functions, as well as the impact of the delays on the applicants' interests." Fraga v. Smith, 607 F. Supp. 517, 521 (D. Or. 1985) (citing Wright v. Califano, 587 F.2d 345, 353 (7th Cir. 1978)). Indeed, "[t]he passage of time alone is rarely enough to justify a court's intervention in the administrative process." Fraga, 607 F. Supp. at 521.

1. A Rule of Reason Governs the Agency Decisions at Issue

The first TRAC factor requires an agency to govern decisions with a rule of reason. TRAC, 750 F.2d at 80. Given the large volume of petitions and applications requiring adjudication, the extensive background check that is required for national security and public

Defendants' Cross-Motion for Summary Judgment
C07-2349 CW                                9

safety, and the limited resources available to it, the FBI is proceeding in an orderly fashion with the completion of name checks in the order in which they are received. See Eldeeb, 2007 WL 2209231, at *2. Once the FBI name check in this case has been completed, USCIS will promptly adjudicate Plaintiffs' applications. Heinauer Decl. ¶ 22. USCIS monitors the case on a weekly basis to determine whether the name check remains pending. Heinauer Decl. ¶ 16-17. Public safety requires USCIS to make certain that the background checks have been completed and any outstanding issues resolved before it reaches a decision.

In Plaintiff Liang's case, this means that USCIS must await the results of the FBI name check before reaching a decision on his I-485 application, and the FBI must be given time to perform an accurate and thorough check. The FBI's "first in, first out" processing approach is a method that is "deserving of deference." Liberty Fund, 394 F. Supp. 2d at 118; see also In re Barr Lab. Inc., 930 F.2d 72, 76 (D.C. Cir. 1991) ("The agency is in a unique and authoritative position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way.").

    2.    There Is No Congressionally Mandated Timetable

The second TRAC factor does not apply to the present case because there is neither a statutory requirement that the FBI process the name check nor one requiring USCIS to adjudicate the application within a certain amount of time. Contra Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, § 3001(g), 118 Stat. 3638 (2004) (requiring Government personnel security checks to be completed within a certain time frame). Additionally, Congress has not provided any clear guidelines indicating the speed at which the FBI and USCIS should conduct its adjudications. Congress has, however, required that USCIS conduct certain criminal and national security background checks to ensure eligibility for adjustment of status. See 8 U.S.C. §§ 1105(b)(1), 1255(a).

Where there are no statutory guidelines, and in order to establish a "rule of reason," this Court must consider the factors that contribute to the backlogs that both the FBI and USCIS face. See, e.g., INS v. Miranda, 459 U.S. 14, 18 (1982) ("Both the number of the applications received by the INS and the need to investigate their validity may make it

Defendants' Cross-Motion for Summary Judgment
C07-2349 CW                                 10

1 difficult for the agency to process an application as promptly as may be desirable"). In
2 making a request for immigration benefits, "aliens only have those statutory rights granted
3 by Congress," Marincas v. Lewis, 92 F.3d 195, 203 (3d Cir. 1996), and no federal statute or
4 regulation prescribes a hard-and-fast deadline for acting upon immigration applications, such
5 as the ones in this case, submitted to the USCIS. See Cordoba v. McElroy, 78 F. Supp. 2d
6 240, 244 (S.D.N.Y. 2000).

7 As discussed in Eldeeb, the FBI name check is a complex process. Eldeeb, 2007 WL
8 2209231, at *2. It involves a check of a variety of sources, and although most name checks
9 are resolved in a matter of hours, approximately 32 percent require additional, manual
10 review. Eldeeb, 2007 WL 2209231, at *2. Of those remaining checks, 22 percent are
11 returned within two months. Id. The FBI processes name checks chronologically, based on
12 the date the name check is submitted. Id. Before September 11, 2001, the FBI processed
13 approximately 2.5 million name checks per year, checking only the "main" files. Id. at *3.
14 In Fiscal Year 2006, the FBI processed over 3.4 million name checks. Id. In addition, the
15 FBI began checking "reference" files. Id. This expansion of the name check procedures
16 prompted USCIS, in December 2002 and January 2003, to resubmit 2.7 million name check
17 requests, for those with pending applications for immigration benefits. Id. at *4. The FBI is
18 currently still working to resolve 440,000 of these resubmitted name checks; because the FBI
19 processes name checks chronologically, the processing of regular name checks has been
20 delayed. Id. Name checks that exceed the two month window require personal attention of
21 the processing agent. Eldeeb, 2007 WL 2209231, at *5. The FBI currently processes
22 approximately 340,000 name checks per year by hand. Id. Thus, it is evident that there are
23 substantial factors contributing to the backlog.

24     3.    The Impact of the Delay is Minimal in Comparison with the National
Interest in Complete and Thorough Background Checks
25

26 The third TRAC factor is the delay's impact on human health, welfare, and economic
27 harm to Plaintiff. This factor's analysis overlaps with the analysis of the fifth TRAC factor,
28 the nature and extent of the interests prejudiced by the delay. TRAC, 750 F.2d at 80; Liberty

Defendants' Cross-Motion for Summary Judgment
C07-2349 CW                                       11

Fund, 394 F. Supp. 2d at 118. Plaintiffs may be inconvenienced by the delay in adjudication, but this individual interest cannot outweigh Defendants' interests in fully and accurately completing each name check. Security background checks for individuals seeking immigration benefits is a key component to our nation's national security. See The 9/11 Commission Report, 2004 WL 1634382 at 352 (July 22, 2004) (finding that, "had the immigration system set a higher bar for determining whether individuals are who or what they claim to be....it could have potentially have excluded, removed, or come into further contact with several hijackers who did not appear to meet the terms for admitting short-term visitors.").

In most cases, the adverse impact caused by the delay is not substantial. Applicants for adjustment of status who have pending applications may apply for and obtain employment authorization for the entire time the application is pending. Additionally, most applicants may also apply for and receive advance parole to enable them to travel abroad during the pendency of their application. Heinauer Decl. ¶ 21. Even when a more substantial impact is felt by an applicant, this impact, "is unlikely to rise to the level that would significantly change the Court's assessment of the unreasonableness of the delay in light of the importance of the agency's competing priorities." Liberty Fund, 394 F. Supp. 2d at 118. As the highest of priorities, "our national security requires that caution and thoroughness in these matters not be sacrificed for the sake of expediency." Safadi v. Howard, 466 F. Supp. 2d 696, 701 (E.D. Va. 2006). Although a delay in processing may have a negative impact, "nevertheless, in this post-9/11 context, agencies must have the freedom to carefully and thoroughly investigate these applications without judicial interference in their priorities." Patil v. Mueller, et al., No. C 07cv71 JCC, 2007 WL 1302752 at *2 (E.D. Va. Apr. 30, 2007) (holding that the Court had no jurisdiction to issue a writ of mandamus due to legal and policy considerations). Thus, when balancing the agencies' interests in defending against threats to national security against the Plaintiffs' interest in adjudication, the interests of the nation must prevail.

///

    4.    <u>The Effect of Expedition Would Intrude on Agency Discretion and Prejudice Other "First In Line" Applicants</u>

Similarly, the effect of expediting delayed agency action under the fourth <u>TRAC</u> factor would unquestionably impinge upon agency activities and responsibilities of a higher priority. Such an order would intrude on the agency's discretion and ability to fulfill its highest priority of safeguarding the nation. See <u>Boim v. Quranic Literacy Institute</u>, 291 F.3d 1000, 1027 (7th Cir. 2002) ("the government's interest in preventing terrorism is not only important but paramount"); <u>see also</u> <u>Walters v. Reno</u>, 145 F.3d 1032, 1043 (9th Cir. 1998) ("The Government's interests in the administration of its immigration laws and in preventing [immigration related] document fraud are likewise considerable.")

Delays in the processing of FBI name checks arise for a variety of reasons. First, USCIS is not the only agency that engages in the FBI name check program. Heinauer Decl. ¶¶ 19-20. Notably, the FBI and USCIS processes' do not occur in vacuums. Any requirement that the FBI or USCIS process Plaintiff's name check or application within a particular time limit will have the unfortunate side effect of slowing the processing for other applicants who are also awaiting action on their applications for immigration benefits. Here, Plaintiffs' applications are under adjudication at the Nebraska Service Center ("NSC"). Heinauer Decl. ¶ 3. As of August 2007, the NSC had approximately 73,135 employment-based adjustment applications pending. Heinauer Decl. ¶ 16. Of those pending applications, 15,430 were awaiting the completion of the FBI name check. <u>Id.</u> The NSC monitors cases with pending name checks on a weekly basis to identify those in which a response from the FBI has been received. <u>Id.</u>

As noted above, the requests generally processed out-of-order are cases expedited by USCIS for specific health, welfare, or economic reasons. Heinauer ¶ 17-18. Absent these compelling reasons, moving some individuals to the front of the queue would simply move that group ahead of others who also had been waiting, resulting in no net gain in processing. See <u>In re Barr Lab.</u>, 930 F.2d at 75; <u>Mashpee Wampanoag Tribal Council, Inc. v. Norton</u>, 336 F.3d 1094, 1101 (D.C. Cir. 2003). Furthermore, ordering Plaintiffs' case to the front of

Defendants' Cross-Motion for Summary Judgment
C07-2349 CW                              13

the line sets the precedent that the more litigious applicants are most likely to move to the top of the pile at the expense of other applicants that have waited even longer, but may not have the resources to file suit. Manzoor v. Chertoff, 472 F. Supp 2d 801, 809 (E.D. Va. 2007); see also Yan, 2007 WL 1521732 at *7 (holding that a grant of review of petitioner's claims would only, "encourage other applicants to file suit to receive expedited treatment rather than wait their turn in line.").

Moreover, the courts have been cautioned against "engrafting their own notions of proper procedures upon agencies entrusted with substantive functions by Congress." Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 525 (1978). Here, where "there are no allegations of bad faith, a dilatory attitude, or a lack of evenhandedness on the part of the agency, the reasonableness of the delays in terms of the legislatively imposed 'reasonable dispatch' duty must be judged in light of the resources that Congress has supplied, as well as the impact of the delays on the applicants' interests." Wright, 587 F.2d at 353. The complexity of agency investigations, as well as the extent that the individual applicants contributed to delays, also enter into a court's deliberations. See Saleh v. Ridge, 367 F. Supp. 2d 508, 512 (S.D.N.Y. 2005). An agency's good faith efforts to address delays militate against a finding of unreasonableness. See Wright, 587 F.2d at 345.

     5.    The Agencies are Exercising Every Effort to Address the Delay

The sixth and last TRAC factor provides that a court need not find impropriety to hold that an agency action is unreasonably delayed. Conversely, "the good faith of the agency in addressing the delay weighs against mandamus." Liberty Fund, 394 F. Supp. 2d at 120. Here, the delay is due to the pendency of Plaintiff Liang's FBI name check. As discussed above, the FBI is processing the name checks to the best of its ability, and USCIS is monitoring the case to ensure that once the name check is complete, USCIS can complete adjudication. Thus, balancing the TRAC factors demonstrates the reasonableness of the Government's actions.

In addition, Plaintiffs have failed to show that USCIS will refuse to adjudicate his application once the FBI completes the requisite name check. See Saleh, 367 F. Supp. 2d at

Defendants' Cross-Motion for Summary Judgment
C07-2349 CW     14

513; see also Eldeeb, 2007 WL 209231, at *17 (finding that the plaintiff had failed to show that USCIS was refusing to act on his application). On the contrary, the FBI and USCIS are taking active steps towards completing the background checks for adjudication of his application.

Many courts have refused to grant relief under the APA, even when naturalization or other immigration applications were pending for significant time periods. See Saleh, 367 F. Supp. 2d at 513 (finding five-year delay not in violation of APA in part in light of volume of applications); Espin v. Gantner, 381 F. Supp. 2d 261, 266 (S.D.N.Y. 2005) (over three-year delay not unreasonable because of government's limited resources and substantial caseload); Alkenani v. Barrows, 356 F. Supp. 2d 652, 656-57 (N.D. Tex. 2005) (no unreasonable delay found in naturalization context because of need to wait for completion of FBI investigation). Just as in these cases, Plaintiffs in the present case insists that this Court find an unreasonable delay based solely on the amount of time passed since receipt of his application. However, the law requires a more in-depth analysis for mandamus relief under the APA. A review of the six TRAC factors shows that Defendants have not unreasonably delayed actions pertaining to Plaintiffs' adjustment of status applications.

## V. CONCLUSION

For the foregoing reasons, the Government respectfully asks the Court to dismiss all Defendants except Defendant Chertoff, and grant the remaining Defendant's motion for summary judgment as a matter of law.

Dated: September 5, 2007

Respectfully submitted,

SCOTT N. SCHOOLS
United States Attorney

ILA C. DEISS
Assistant United States Attorney
Attorneys for Defendants

Defendants' Cross-Motion for Summary Judgment
C07-2349 CW                                    15