Exhibit A

DECLARATION OF F. GERARD HEINAUER

F. GERARD HEINAUER, pursuant to 28 U.S.C. § 1746, declares the following:

1. I am employed by the Department of Homeland Security ("DHS"), Citizenship and Immigration Services Division ("USCIS"), as the Director of the Nebraska Service Center in Lincoln, Nebraska. It is in that capacity and based upon reasonable inquiry and my knowledge, information and belief that I provide this declaration.

2. I am a named defendant in the case <u>Jun Liang, et al., v. Gonzales, et al.</u>, 07-02349, presently pending in the United States District Court for the Northern District of California. Plaintiffs Jun Liang and his wife, Yunqiu Yuan, seek to have their pending Forms I-485, Applications for Adjustment of Status, adjudicated.

3. Plaintiffs Jun Liang and Yunqiu Yuan are citizens of China who have been assigned alien registration numbers A98 460 997 and A98 460 998, respectively. They filed Forms I-485, Applications for Adjustment of Status, at the California Service Center on April 20, 2005. The applications were assigned receipt numbers WAC 05-144-50396 and WAC 05-144-50320, respectively, and remain pending. Both applications were transferred to the

Nebraska Service Center for adjudication on March 2, 2007.

4. Plaintiff Jun Liang's adjustment of status application is based on an application for an alien worker position (skilled worker/professional) filed with the U.S. Department of Labor by his employer, Oracle USA, Incorporated (Oracle) on April 25, 2005. The U.S. Department of Labor ultimately certified the position, thus indicating that there are not sufficient U.S. workers available to fill the position and that employment of Plaintiff will not adversely affect the wages and working conditions of similarly-employed workers in the United States. The priority date for the labor certification, usually established by the date the request was initially accepted for processing is March 18, 2002. On July 2, 2007, the Department of State announced that all employment-based visa numbers under the fiscal year numerical limitations set by Congress have been used and that employment preference numbers will be once again be available beginning October 1, 2007, under the fiscal year 2008 annual numerical limitations.

5. The approved labor certification was filed with USCIS by Plaintiff's employer, Oracle, along with a Form I-

140, immigrant visa petition for alien worker, on April 25, 2005, seeking classification of Plaintiff as a qualified alien worker (skilled worker/professional). The visa petition was approved July 11, 2005. The goal of the I-140 and I-485 filings is to obtain lawful permanent resident ("green card") status for Plaintiff and any qualified dependent spouse or child through his employment in the United States.

6. General requirements for employment-based adjustment of status applications are that the alien is the beneficiary of an approved I-140 visa petition (or is the spouse of an alien worker who has adjusted status), is in lawful immigration status, has a visa number immediately available to him under the annual per-country and preference category quota, and is not inadmissible to the United States under listed statutory grounds that include health-related, criminal, and national security provisions.

7. The attached Fact Sheet explains the different types of background and security checks relevant to the statutory requirement that the alien be admissible to the United States that must be completed prior to adjudication of Form I-485.

8. When an alien applies for adjustment of status, USCIS conducts several forms of security and background checks to ensure that the alien is eligible for the immigration benefit and that he or she is not a risk to national security or public safety. In addition to records checks against DHS's own immigration systems, these background checks currently include (a) a Federal Bureau of Investigation (FBI) fingerprint check for relevant criminal history records on the alien (e.g., arrests and convictions); (b) a check against the DHS-managed Interagency Border Inspection System (IBIS) that contains records and "watch list" information from more than twenty federal law enforcement and intelligence agencies, such as the Central Intelligence Agency (CIA), FBI, other divisions of the United States Department of Justice, Department of State, DHS/U.S. Customs and Border Protection (CBP), and other DHS agencies (IBIS includes, but is not limited to, information related to persons who are wanted or under investigation for serious crimes or suspected of terrorism-related activity); and (c) and FBI name check, which is run against FBI investigative databases containing information that is not necessarily revealed by the FBI's fingerprint check or IBIS.

9. These law enforcement checks have revealed significant derogatory information on various alien applicants for immigration benefits, including applicants seeking permanent residency, which has resulted in the alien being found ineligible for the benefit and USCIS's denial of the application. Where applicable, the information has also resulted in aliens being arrested by law enforcement agencies or charged under removal grounds and deported from the United States following a final order of removal. In many instances, the disqualifying information on the alien has been discovered as a result of the IBIS or FBI name checks, but it has not been revealed by a fingerprint check alone.

10. Since the terrorist attacks of September 11, 2001, the need to conduct more rigorous and thorough background checks on aliens who are seeking immigration status in the United States has required procedures that sometimes result in individuals not receiving their documents and benefits as quickly as in the past. In order to ensure national security and public safety, as well as to reduce the waiting time for adjudication and documentation of lawful status, USCIS is currently working with DOJ, DHS, and ICE to develop and implement

improved procedures that will ensure that all of the background checks are completed and the results considered as quickly as possible. However, the public safety requires USCIS to make certain that the checks have been done before it adjudicates any application or petition and before it issues any immigration status documents to such persons.

11. USCIS will continue to perform any outstanding background and security checks as expeditiously as possible to help ensure that no eligible alien must wait longer than is reasonably necessary to receive a decision on his or her application or petition and to receive evidence of his or her immigration status.

12. The fingerprint check must be less than fifteen months old at the time any application or petition is adjudicated. Both Plaintiffs were fingerprinted on October 13, 2005 and March 7, 2007. The rescheduling of fingerprints is done to ensure that the cases are ready to be adjudicated once Plaintiff Jun Liang's name check clears.

13. Plaintiffs' preliminary IBIS checks have been completed. Remaining IBIS checks are performed by the officer at the time of final adjudication if deemed necessary.

14. Since 9/11, USCIS has submitted millions of name check requests to the FBI, thus taxing that agency's resources and creating a backlog in FBI's performance of complete security checks. Both Plaintiffs' name check requests were electronically submitted to the FBI on April 28, 2005, approximately one week after receipt of their adjustment of status applications. The FBI acknowledged receipt of the name checks on May 3, 2005. The name check remains pending for Plaintiff Jun Liang. Plaintiff Yunqiu Yuan's name check was completed on May 5, 2005. Nevertheless, as a dependent spouse, her application for adjustment can't be adjudicated until Mr. Jun Liang's application for adjustment of status, as the principal worker, is completed.

15. There are five USCIS regional Service or Benefit Centers throughout the United States, each of which has jurisdiction over certain applications and petitions filed by persons or companies within its respective geographic jurisdiction, and/or exclusive nationwide jurisdiction over other types of applications. These Centers adjudicate cases on a mail-in basis only; they do not conduct in-person interviews. Employment-based adjustment of status cases like Plaintiff Jun Liang's are handled at the Nebraska and Texas Service Centers.

16. The Nebraska Service Center currently has approximately 73,135 employment-based Form I-485 adjustment of status cases pending, about 26,654 of which are still awaiting completion of FBI name checks before they can be adjudicated. Of an additional 83,209 (estimated) pending asylum/refugee-base Form I-485 adjustment of status cases, there are approximately 15,430 awaiting responses on FBI name checks. Of a total figure of approximately 72,793 naturalization applications filed and pending at NSC, 21,279 are awaiting responses on FBI name checks. Cases in which the pending FBI name check is the only impediment to final adjudication are audited on a weekly basis in order to identify those in which a response from the FBI has been received. Plaintiff's FBI name check is pending. A response is required from the FBI before the case can be adjudicated. Processing times made available to the public at USCIS's website are merely estimates for routine cases.

17. Service Centers have a process for expediting processing of certain applications and petitions. However, it is important to note that whenever a particular application or petition receives expedited processing and is moved up in the adjudications queue,

it is at the expense of those still unadjudicated petitions or applications that bear an earlier filing date. If, for example, USCIS asks the FBI to expedite a case, this action comes at the expense of other name check cases, many of which have been pending since December 2002, because FBI would have fewer resources with which to work the other pending cases. USCIS is currently limited in the number of expedite requests that can be made to the FBI each week, and there is a backlog even in submitting the expedite requests for cases that have been deemed to meet expedite criteria.

18. In order to address in a consistent and fair manner the increasing number of mandamus actions filed nationwide by aliens awaiting decisions on their petitions and applications, USCIS issued specific guidelines for requesting an expedited name check from the FBI. Expedited processing may be pursued in cases at USCIS's discretion for military deployment, age-out cases and applications affected by sunset provisions, significant and compelling reasons such as critical medical conditions, loss of social security benefits or other subsistence, severe financial loss, extreme emergent situation, humanitarian situation, nonprofit status of requesting organization in furtherance of the cultural

and social interest of the United States, Department of Defense/National Interest requests from official U.S. government entity, USCIS error, or compelling interest of USCIS.

19. To my knowledge, Plaintiff has not made a formal request for expedited processing. Expedite requests are determined on a case-by-case basis. Plaintiffs state in their complaint that they wish to have their green cards quickly because they have been "greatly damaged" and "cannot travel or work without restriction." These are common reasons for aliens to desire lawful permanent resident status and do not generally constitute a special circumstance that would justify emergency or expedited processing. Other common reasons include inability of non-lawful permanent residents or non-U.S. citizens to: acquire time for naturalization eligibility, get grant funds for research, apply for desirable jobs, qualify for scholarships or fellowships, or get in-state tuition for self, spouse or dependents.

20. Another common factor in the many mandamus lawsuits filed against USCIS and involving pending FBI name checks are the plaintiffs' claims that they made repeated status inquiries about their case to USCIS,

FBI, Congress, and the White House. While multiple status inquires show the applicants' frustration with the pace of the processing of their applications, the inquiries, and mandamus actions, increase the workload of the FBI or USCIS, rather than having the effect of faster or special treatment of the subject applications.

21. Most applicants for adjustment of status may apply for and be granted (usually in one-year increments) work authorization documents and advance parole documents to enable them to travel abroad while their application is pending. Plaintiff Jun Liang holds a work permit incident to his status as an applicant for adjustment of status, authorizing him to work for any United States employer valid though May 20, 2008. Jun Liang currently holds an advance parole travel document valid through March 14, 2008. Plaintiff Yunqiu Yuan was issued an advance parole travel document valid through March 5, 2008, and currently holds a work permit valid through July 11, 2008.

22. The Nebraska Service Center is processing Mr. Jun Liangs's and Ms. Yunqiu Yuan's adjustment of status applications in accordance with standard procedures.

I declare under penalty of perjury that the foregoing is true and correct.

    Executed at Lincoln, Nebraska
    on this 5th day of September, 2007.

                                           F. Gerard Heinauer
                                           Service Center Director
                                           Nebraska Service Center

*Press Office*
U.S. Department of Homeland Security



U.S. Citizenship
and Immigration
Services

April 25, 2006

Fact Sheet

# Immigration Security Checks—How and Why the Process Works

**Background**

All applicants for a U.S. immigration benefit are subject to criminal and national security background checks to ensure they are eligible for that benefit. U.S. Citizenship and Immigration Services (USCIS), the Federal agency that oversees immigration benefits, performs checks on every applicant, regardless of ethnicity, national origin or religion.

Since 2002, USCIS has increased the number and scope of relevant background checks, processing millions of security checks without incident. However, in some cases, USCIS customers and immigrant advocates have expressed frustration over delays in processing applications, noting that individual customers have waited a year or longer for the completion of their adjudication pending the outcome of security checks. While the percentage of applicants who find their cases delayed by pending background checks is relatively small, USCIS recognizes that for those affected individuals, the additional delay and uncertainty can cause great anxiety. Although USCIS cannot guarantee the prompt resolution of every case, we can assure the public that applicants are not singled out based on race, ethnicity, religion, or national origin.

USCIS strives to balance the need for timely, fair and accurate service with the need to ensure a high level of integrity in the decision-making process. This fact sheet outlines the framework of the immigration security check process, explaining its necessity, as well as factors contributing to delays in resolving pending cases.

**Why USCIS Conducts Security Checks**

USCIS conducts security checks for all cases involving a petition or application for an immigration service or benefit. This is done both to enhance national security and ensure the integrity of the immigration process. USCIS is responsible for ensuring that our immigration system is not used as a vehicle to harm our nation or its citizens by screening out people who seek immigration benefits improperly or fraudulently. These security checks have yielded information about applicants involved in violent crimes, sex crimes, crimes against children, drug trafficking and individuals with known links to terrorism. These investigations require time, resources, and patience and USCIS recognizes that the process is slower for some customers than they would like. Because of that, USCIS is working closely with the FBI and other agencies to speed the background check process. However, USCIS will never grant an immigration service or benefit before the required security checks are completed regardless of how long those checks take.

**Immigration Security Checks—How and Why the Process Works**

---

**How Immigration Security Checks Work**

To ensure that immigration benefits are given only to eligible applicants, USCIS adopted background security check procedures that address a wide range of possible risk factors. Different kinds of applications undergo different levels of scrutiny. USCIS normally uses the following three background check mechanisms but maintains the authority to conduct other background investigations as necessary:

- **The Interagency Border Inspection System (IBIS) Name Check**— IBIS is a multiagency effort with a central system that combines information from multiple agencies, databases and system interfaces to compile data relating to national security risks, public safety issues and other law enforcement concerns. USCIS can quickly check information from these multiple government agencies to determine if the information in the system affects the adjudication of the case. Results of an IBIS check are usually available immediately. In some cases, information found during an IBIS check will require further investigation. The IBIS check is not deemed completed until all eligibility issues arising from the initial system response are resolved.

- **FBI Fingerprint Check**—FBI fingerprint checks are conducted for many applications. The FBI fingerprint check provides information relating to criminal background within the United States. Generally, the FBI forwards responses to USCIS within 24-48 hours. If there is a record match, the FBI forwards an electronic copy of the criminal history (RAP sheet) to USCIS. At that point, a USCIS adjudicator reviews the information to determine what effect it may have on eligibility for the benefit. Although the vast majority of inquiries yield no record or match, about 10 percent do uncover criminal history (including immigration violations). In cases involving arrests or charges without disposition, USCIS requires the applicant to provide court certified evidence of the disposition. Customers with prior arrests should provide complete information and certified disposition records at the time of filing to avoid adjudication delays or denial resulting from misrepresentation about criminal history. Even expunged or vacated convictions must be reported for immigration purposes.

- **FBI Name Checks**—FBI name checks are also required for many applications. The FBI name check is totally different from the FBI fingerprint check. The records maintained in the FBI name check process consist of administrative, applicant, criminal, personnel and other files compiled by law enforcement. Initial responses to this check generally take about two weeks. In about 80 percent of the cases, no match is found. Of the remaining 20 percent, most are resolved within six months. Less than one percent of cases subject to an FBI name check remain pending longer than six months. Some of these cases involve complex, highly sensitive information and cannot be resolved quickly. Even after FBI has provided an initial response to USCIS concerning a match, the name check is not complete until full information is obtained and eligibility issues arising from it are resolved.

For most applicants, the process outlined above allows USCIS to quickly determine if there are criminal or security related issues in the applicant's background that affect eligibility for immigration benefits. Most cases proceed forward without incident. However, due to both the sheer volume of security checks USCIS conducts, and the need to ensure that each applicant is thoroughly screened, some delays on individual applications are inevitable. Background checks may still be considered pending when either the FBI or relevant agency has not provided the final response to the background check or when the FBI or agency has provided a response, but the response requires further investigation or review by the agency or USCIS. Resolving pending cases is time-consuming and labor-intensive; some cases legitimately take months or even

**Immigration Security Checks—How and Why the Process Works**

---

several years to resolve. Every USCIS District Office performs regular reviews of the pending caseload to determine when cases have cleared and are ready to be decided. USCIS does not share information about the records match or the nature or status of any investigation with applicants or their representatives.