IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUN LIANG and YUNQIU YUAN, | No. C-07-2349 CW |
| Plaintiffs, | ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT |
| v. | |
| The Attorney General of the United States, et al., | |
| Defendants. | |

Plaintiffs Jun Liang and Yunqiu Yuan move for summary judgment on their claims for an order compelling Defendants to adjudicate their applications for adjustment of immigration status. Defendants oppose Plaintiffs' motion and cross-move for summary judgment. The matter was heard on October 11, 2007. Having considered the oral argument and all of the papers filed by the parties, the Court grants Plaintiffs' motion for summary judgment and denies Defendants' cross-motion for summary judgment.

BACKGROUND

On or about April 20, 2005, Plaintiffs each submitted an I-485

1 application with the U.S. Citizenship and Immigration Services
2 (USCIS) seeking adjustment of their immigration status to lawful
3 permanent resident.  Mr. Liang's request for adjustment is based on
4 his employment in the United States; Ms. Yuan's application is
5 dependent on Mr. Liang's and cannot be adjudicated until his has
6 been completed.

7 Approximately one week after Plaintiffs' I-485 applications
8 were received, the USCIS submitted Plaintiffs' names to the Federal
9 Bureau of Investigation (FBI) for a background security check.
10 This check is performed on all applicants for adjustment of status.
11 The FBI completed Ms. Yuan's name check in May, 2005.  It has not
12 yet completed Mr. Liang's name check, and the USCIS has not
13 provided an estimate of when it expects the check will be
14 completed.  Plaintiffs' applications are currently pending, and
15 will be adjudicated once the USCIS receives the results of Mr.
16 Liang's FBI background check.

17                           LEGAL STANDARD

18 Summary judgment is properly granted when no genuine and
19 disputed issues of material fact remain, and when, viewing the
20 evidence most favorably to the non-moving party, the movant is
21 clearly entitled to prevail as a matter of law.  Fed. R. Civ.
22 P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);
23 Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir.
24 1987).

25 The moving party bears the burden of showing that there is no
26 material factual dispute.  Therefore, the court must regard as true
27 the opposing party's evidence, if supported by affidavits or other

28                                  2

evidentiary material.  <u>Celotex</u>, 477 U.S. at 324; <u>Eisenberg</u>, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Intel Corp. v. Hartford Accident & Indem. Co.</u>, 952 F.2d 1551, 1558 (9th Cir. 1991).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods.  <u>Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1106 (9th Cir. 2000).

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

<u>Id.</u>

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim.  <u>Id.</u>; <u>see also</u> <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 885 (1990); <u>Bhan v. NME Hosps., Inc.</u>, 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  <u>Bhan</u>, 929

3

F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. <u>Nissan</u>, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. <u>Id.</u>

Where the moving party bears the burden of proof on an issue at trial, it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a <u>prima facie</u> showing in support of its position on that issue. <u>UA Local 343 v. Nor-Cal Plumbing, Inc.</u>, 48 F.3d 1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. <u>Id.</u>; <u>see also</u> <u>Int'l Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1264-65 (5th Cir. 1991). Once it has done so, the non-moving party must set forth specific facts controverting the moving party's <u>prima facie</u> case. <u>UA Local 343</u>, 48 F.3d at 1471. The non-moving party's "burden of contradicting [the moving party's] evidence is not negligible." <u>Id.</u> This standard does not change merely because resolution of the relevant issue is "highly fact specific." <u>Id.</u>

DISCUSSION

I.  Proper Parties to This Action

There are five Defendants in this action: the Attorney General of the United States; Michael Chertoff, Secretary of the U.S. Department of Homeland Security (DHS); Emilio T. Gonzalez, Director of the USCIS; Gerard Heinauer, Director of the USCIS's Nebraska

4

Service Center; and Robert Mueller, Director of the FBI. Defendants argue that as the head of the DHS, the agency within which the USCIS is located, Secretary Chertoff is the only appropriate defendant in this case.

In support of their argument, Defendants cite only two cases, Konchitsky v. Chertoff, 2007 WL 2070325 (N.D. Cal.), and Dmitriev v. Chertoff, 2007 WL 1319533 (N.D. Cal.). As here, both cases involve challenges to lengthy delays in the USCIS's processing of I-485 applications. Contrary to Defendants' assertions, Kochitsky actually works against their argument that Secretary Chertoff is the only proper defendant. In that case, the court allowed the plaintiff to maintain his claims not only against Secretary Chertoff, but also against the director of the USCIS and the acting director of the USCIS's California Service Center. 2007 WL 2070325 at *7. Equivalent USCIS officers are named as Defendants here.

While Dmitriev did dismiss the claims against the director of the USCIS, retaining only Secretary Chertoff as a defendant, it did so with little discussion and without citing any legal authority. 2007 WL 1319533 at *4. The case is also at odds with the Administrative Procedure Act (APA), which provides that an action for judicial review of an agency's action "may be brought against the United States, the agency by its official title, or the appropriate officer." 5 U.S.C. § 703. Kochitsky and other cases have permitted actions to go forward against more than one of these defendants at a time. See, e.g., Dong v. Chertoff, 2007 WL 2601107 (N.D. Cal.); Fu v. Gonzales, 2007 WL 1742376 (N.D. Cal.); see also Computerware, Inc. v. Knotts, 626 F. Supp. 956, 960 (E.D.N.C. 1986)

5

("When an instrumentality of the United States is the real defendant, the plaintiff should have the option of naming as defendant the United States, the agency by its official title, appropriate officers, or any combination of them.") (quoting the House Report on the 1976 amendment of 5 U.S.C. § 703).

Here, Plaintiffs name as Defendants three officials within the USCIS, the agency with responsibility for acting on their I-485 application, or within the DHS, its parent agency. While the APA does not specify in detail who the "appropriate officer" is in a challenge to an agency action, the Court finds that these officers, as higher-level administrators, fall within the statute's ambit. All of these Defendants are therefore proper parties under the APA. While suing more than one of them may serve no practical purpose in this case, allowing the action to go forward against multiple instrumentalities of the United States will not prejudice the government, either. The Court is not persuaded by the arguments in favor of dismissing any of these parties, and Defendants' motion is denied with respect to Secretary Chertoff, Director Gonzalez, and Director Heinauer.

The analysis is different when it comes to FBI Director Robert Mueller. Although the FBI is responsible for conducting Mr. Liang's background check, it is not housed within the DHS or the USCIS, which are charged with acting on Plaintiffs' I-485 applications. <u>Konchitsky</u> noted that courts squarely addressing the issue have "overwhelmingly concluded" that the APA does not confer jurisdiction over the FBI in connection with an action for judicial review of the USCIS's failure to act on an adjustment of status

6

application. 2007 WL 2070325 at *6. Thus, the court dismissed the claims against Director Mueller while permitting the action to continue against the DHS and USCIS defendants. The Court finds the reasoning in Konchitksy persuasive, and dismisses the claims against Defendant Mueller.

Similarly, although the U.S. Attorney General formerly bore responsibility for implementing the Immigration and Nationality Act, this responsibility has resided in the Secretary of the Department of Homeland Security since March 1, 2003. See 6 U.S.C. §§ 271(b)(5), 557. Like Director Mueller, the Attorney General has no statutory obligation or authority to adjudicate Plaintiffs' I-485 petition. Therefore, the claims against the Attorney General are dismissed as well.

II. The Court's Power to Compel Defendants to Act

Defendants argue that the Court may not force them to act on Plaintiffs' I-485 applications because adjustment of status is a discretionary, non-discrete action that cannot be compelled under either the federal mandamus statute or the APA.

The standard for relief under the Mandamus Act and § 706 of the APA is for all practical purposes the same. R.T. Vanderbilt Co. v. Babbitt, 113 F.3d 1061, 1065 (9th Cir. 1997). Mandamus is an extraordinary remedy pursuant to which a court may compel an officer of the government "to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The Ninth Circuit has held that mandamus is available when: "(1) the plaintiff's claim is clear and certain; (2) the defendant official's duty is ministerial and so plainly prescribed as to be free from doubt; and (3) no other

7

1 adequate remedy is available." Idaho Watersheds Project v. Hahn, 307 F.3d 815, 832 (9th Cir. 2002).

Under § 706(1) of the APA, a court may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The APA further provides that agencies must conclude matters before them "within a reasonable time." 5 U.S.C. § 555(b). In Norton v. South Utah Wilderness Alliance, 542 U.S. 55, 64 (2004), the Supreme Court held that a plaintiff states a claim for relief under § 706(1) when he "asserts that an agency failed to take a discrete agency action that it is required to take."

Defendants correctly note that the Immigration and Naturalization Act (INA) gives the Secretary of the DHS the discretion to adjust an applicant's status, and that neither the Act nor applicable regulations impose a particular time limit on his decision. See 8 U.S.C. § 1255(a); 8 C.F.R. § 245 et seq. However, even though the outcome and procedural underpinnings of an I-485 adjudication are left to the discretion of the Secretary, a number of courts in this District have held, and Defendants apparently acknowledge, that the Secretary does not have the discretion to refuse to adjudicate the application altogether. See Toor v. Still, 2007 WL 2028407 at *1 (N.D. Cal.) (collecting cases). Put simply, "there is a difference between the [USCIS's] discretion over how to resolve an application and the [USCIS's] discretion over whether it resolves an application." Singh v. Still, 470 F. Supp. 2d 1064, 1068 (N.D. Cal. 2007) (emphasis in original). Plaintiffs do not seek an order mandating that their status be adjusted; they request only that the Court compel the

8

1 Secretary to discharge his duty to adjudicate their applications
2 without unreasonable delay.
3     Similarly, while Defendants argue that the FBI must be allowed
4 to exercise discretion in determining the way in which it conducts
5 background checks, granting summary judgment in Plaintiffs' favor
6 would not amount to dictating to the FBI how to conduct those
7 checks.  Indeed, the Court has already concluded that Director
8 Mueller is not a proper party to this action, and any potential
9 order would bind only the DHS and USCIS Defendants.  It would be up
10 to these Defendants to determine how best to comply with an order
11 compelling them to fulfill their obligations under the INA.
12     In two similar actions in which the plaintiffs requested an
13 order compelling the USCIS to process their I-485 applications
14 promptly, this Court concluded that issuing such an order would not
15 impermissibly interfere with the agency's discretion.  Yu v.
16 Chertoff, 2007 WL 1742850 (N.D. Cal.); Clayton v. Chertoff, 2007 WL
17 2904049 (N.D. Cal.).  In those decisions, the Court rejected
18 arguments similar to the ones Defendants now make, including that
19 the Court lacked subject matter jurisdiction because adjustment of
20 status is committed to the DHS Secretary's discretion as a matter
21 of law.  The Court acknowledged that some courts outside this
22 District have found that the speed with which the USCIS adjudicates
23 I-485 applications is discretionary and not subject to judicial
24 review.  Id. at *2.  But the Court followed other judges within the
25 District that have concluded that they could compel the government
26 to process an unreasonably delayed immigration petition.  Id.; see
27 also, e.g., Quan v. Chertoff, 2007 WL 1655601 (N.D. Cal.); Baker v.

9

1  Still, 2007 WL 1393750 (N.D. Cal.).  Defendants cite no precedent
2  sufficient to persuade the Court to take a different position here
3  than it did in Yu or Clayton.

4     Defendants' point that they are not statutorily obliged to
5  adhere to any particular time-frame in adjudicating I-485
6  applications is well-taken.  It is true that the USCIS's discretion
7  to set the procedures by which it adjudicates these applications
8  gives it some flexibility in determining the timing of a decision.
9  Nonetheless, each adjudication must ultimately be completed within
10 a reasonable amount of time.  To accept Defendants' argument that
11 timing is always a matter of discretion beyond the Court's power to
12 intervene would enable them to avoid judicial review even of
13 adjudications that were postponed indefinitely.  This would
14 eviscerate § 706(1) of the APA, which clearly gives the Court the
15 power to "compel agency action . . . unreasonably delayed."

16    As explained in Yu v. Brown, 36 F. Supp. 2d 922, 932 (D.N.M.
17 1999), "although neither [governing] statute specifies a time by
18 which an adjudication should be made, we believe that by necessary
19 implication the adjudication must occur within a reasonable time.
20 A contrary position would permit the INS to delay indefinitely.
21 Congress could not have intended to authorize potentially
22 interminable delays."  Accordingly, the Court finds that it has the
23 authority under the Mandamus Act and the APA to compel Defendants
24 to adjudicate promptly Plaintiffs' petitions for adjustment of
25 status.

26    Defendants also argue that the Court may not grant Plaintiffs'
27 requested relief because the action they seek to compel is not

28                                  10

"discrete." They assert that Plaintiffs ask the Court to compel "multiple actions, including whether USCIS requests an expedited name check, and the pace at which USCIS issues a decision once Plaintiff Liang's name check is complete." This argument is not persuasive. It is true that multiple steps are involved in the course of adjudicating an application for adjustment of status. Yet just as matter can be split down to the atom, any agency action can be cast as the sum of smaller parts.

Norton, upon which Defendants exclusively rely in support of their argument, merely precludes a plaintiff from bringing a "broad programmatic attack" on an agency under § 706(1) of the APA. 542 U.S. at 64. Plaintiffs do not seek wholesale reform of the process by which USCIS adjudicates I-485 petitions; they merely seek an adjudication of their individual applications. Their claim meets Norton's requirement that it be directed "against some particular 'agency action' that causes [them] harm." Id. Accordingly, the Court finds that the action Plaintiffs seek to compel is sufficiently "discrete" to be subject to review under § 706 of the APA.

III. Reasonableness of Defendants' Delay

As discussed above, the Court finds that the USCIS has a non-discretionary duty to process Plaintiffs' I-485 applications within a reasonable amount of time. The question then is whether the USCIS's delay of more than two and a half years is reasonable under the circumstances.

"What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of

11

the particular case." Gelfer v. Chertoff, 2007 WL 902382 at *2 (N.D. Cal.) (quoting Yu v. Brown, 36 F. Supp. 2d at 932). Many of the cases in which summary judgment has been granted in favor of a plaintiff seeking adjudication of an I-485 application involve facts similar to those here. In nearly every case, the delay in processing the application was due to an uncompleted FBI background check. A number of courts have found that, under normal circumstances, a delay of approximately two years or longer due to an uncompleted FBI background check is unreasonable as a matter of law. See, e.g., Dong, 2007 WL 2601107; Konchitsky, 2007 WL 2070325; Huang v. Chertoff, 2007 WL 1831105 (N.D. Cal.); Liu v. Chertoff, 2007 WL 2433337 (E.D. Cal.).

In analyzing the reasonableness of the USCIS's delay, some courts have considered the factors articulated in Telecommunications Research and Action Center v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for the rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency

12

action is unreasonably delayed.
(citations and internal quotation marks omitted).

Defendants assert that the background check is a complex process that must accommodate an extremely large volume of requests from the USCIS. Given the backlog of name-check requests and the FBI's limited resources, they maintain that the delay of two and a half years in processing Mr. Liang's background check is not unreasonable. There is some validity to these points, and the Court appreciates that the name-check process is indeed complex and resource-intensive. But limited resources or not, a common-sense rule of reason dictates that if the FBI was performing background checks with due diligence, it would not take two and a half years to process Mr. Liang's name. While the Court is sympathetic to the demands placed on the FBI and the limited ability of the USCIS to control how the FBI allocates its resources, a lack of sufficient resources devoted to name-check operations is a matter for the agencies to take up between themselves or with Congress. The executive branch must decide for itself how best to meet its statutory duties; this Court can only decide whether or not those duties have been met. See Dong, 2007 WL 2601107 at *11 ("[I]t is not the place of the judicial branch to weigh a plaintiff's clear right to administrative action against the agency's burdens in complying.").

Moreover, although there is no Congressionally mandated timetable for the processing of I-485 applications, Congress has by statute expressed its view of what a reasonable amount of time is: "It is the sense of Congress that the processing of an immigration

13

benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571. The Court recognizes that this statute was enacted prior to the events of September 11, 2001, and that the burdens on agencies with responsibility for immigration matters have since increased. Nonetheless, Plaintiffs' applications have been pending for five times the length of the period identified by Congress.

The Court also accepts that competing priorities and considerations of national security rightly factor into an evaluation of the reasonableness of Defendants' delay. But again, these interests can only get Defendants so far; Defendants cannot simply raise the shield of national security to avoid meaningful review of their delay. National security may require that a background check be performed in the first place, but it does not require that the process drag on for years. Defendants have provided no particularized facts to suggest that national security concerns apply with special force to Mr. Liang's application or that his name check is otherwise subject to special circumstances. Moreover, the USCIS is not without the power to speed up the adjudication of Plaintiffs' applications. Indeed, the agency maintains a policy whereby it may request that the FBI expedite a particular name check if certain criteria are met. This suggests that promptly completing the adjudication of Plaintiffs' applications would neither adversely affect national security nor be quite the difficult task Defendants portray it to be.

Defendants argue that expediting Mr. Liang's name check will prejudice other applicants who have been waiting longer than he -

14

in some cases, since as long as December, 2002. While this would be unfortunate, Defendants' failure to fulfill their statutory duty to other applicants has no bearing on whether they have fulfilled their statutory duty to Plaintiffs, and thus cannot serve as a basis for denying Plaintiffs' motion. While Defendants worry that granting Plaintiffs relief may reward "the more litigious applicants" or encourage other applicants to file lawsuits, "perhaps recognizing this possibility will provide the defendants with adequate incentive to begin processing [I-485] applications in a lawful and timely fashion in order to obviate the applicants' need to resort to the courts for redress." Dong, 2007 WL 2601107 at *12.

Finally, agency decisions that bear on an individual's immigration status are matters affecting human welfare, and thus delays are less tolerable than with other types of decisions. Plaintiffs have lived for two and a half years with uncertainty over their right to remain in the United States. Defendants attempt to portray the impact of their delay on Plaintiffs as minimal by stating that Plaintiffs have already been granted the right to work here and travel abroad. But Defendants do not take into account the instability that accompanies Plaintiffs' not knowing whether they will be allowed to remain in the United States in the long run. While they are waiting for Defendants' decision, they cannot make long-term plans because they must face the possibility that they will ultimately be forced to return to their country of origin. Defendants owe Plaintiffs the right to know after a reasonable amount of time whether they are entitled to

15

begin building a life for themselves in this country.  Two and a half years is no petty amount of time to spend waiting.

Taking into account these considerations, the Court adopts the view of other courts in this district and concludes that Defendants' two and a half-year delay is unreasonable as a matter of law.  Accordingly, the Court grants Plaintiffs' motion for summary judgment.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is GRANTED and Defendants' cross-motion for summary judgment is DENIED.  Defendants are ordered to request that the FBI expedite Mr. Liang's background check and to complete their adjudication of Plaintiffs' I-485 applications expeditiously.  Judgment for Plaintiffs shall enter accordingly.  Each party shall bear its own costs.

IT IS SO ORDERED.

Dated: 10/30/07

_____
CLAUDIA WILKEN
United States District Judge